1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                  **SOUTHERN DISTRICT OF CALIFORNIA**

10  | CLAYTON TREVOR MACK, | Civil No.        09-1700 JLS (AJB) |

11                                    Petitioner,

12                    vs.                        **REPORT AND RECOMMENDATION RE: DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS**

13  ROBERT HERNANDEZ, Warden,

                                    Respondent.
14

15  **I.      INTRODUCTION**

16          Clayton Trevor Mack (Mack) is a California prisoner serving an indeterminate sentence of

17  twenty-five years to life in addition to a consecutive determinate term of thirty-eight years and eight

18  months in prison.  In San Diego Superior Court case number SCD189468, Mack was convicted on

19  November 29, 2005, of kidnaping for rape, three counts of forcible rape, three counts of forcible oral

20  copulation, residential burglary, making a criminal threat, corporal injury to a spouse or roommate,

21  attempting to dissuade a witness from testifying and disobeying a court order.  (Lodgment No. 15, vol.

22  1 at 0009-14.)  Various allegations and enhancements were also found true by the jury.  (*Id.*)

23          Mack has filed a Petition (Pet.) for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254

24  challenging his convictions.  He contends his Sixth Amendment right to counsel was violated when the

25  trial court refused to grant him a continuance in order to permit him to replace retained counsel and

26  refused his request to represent himself.  (Pet. at 10-11.)[1]  He also argues these denials rendered his trial

27

28          [1]  For ease of reference, the Court uses the pagination assigned to the Petition by the Court's electronic filing system.

1   fundamentally unfair.  (*Id.* at 12.)  Finally, he claims his Sixth Amendment right to have every fact

2   which increases his punishment above the statutory maximum found by a jury beyond a reasonable

3   doubt, as delineated by *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and its progeny, was violated by

4   the sentence he received.  (*Id.* at 12-14.)

5        This Court has reviewed the Petition, Respondent's Answer, the Traverse, and all supporting

6   documents.  After a thorough review of the record, the Court finds that Petitioner is not entitled to the

7   relief requested and **RECOMMENDS** that the Petition be **DENIED**.

8   **II.   FACTUAL BACKGROUND**

9        This Court gives deference to state court findings of fact and presumes them to be correct;

10  Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  28

11  U.S.C.A. § 2254(e)(1)(West 2006); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings

12  of historical fact, including inferences properly drawn from these facts, are entitled to statutory

13  presumption of correctness).  The following facts are taken from the California Court of Appeal's

14  opinion denying Mack's direct appeal of his conviction:

A.   Prosecution Case

Jaime J. dated Mack for over two years and lived with him for some period of time.  However, they terminated their relationship in late January 2005.  Jaime moved into her mother's apartment, but Mack continued to telephone her.  He came to her mother's apartment on February 6, 2005, ostensibly just to "talk," but raped her.  However, she did not immediately report the assault to police.

The following morning, while Jaime was in the shower, Mack entered her apartment and came into the bathroom.  He was carrying a knife and a glass pipe.  He forcibly raped her twice and forced her to orally copulate him.  After he left, Jaime called 911 and obtained a restraining order.

Jaime did not see Mack again until March 4, 2005.  Mack continued to try to contact Jaime, and left several voice mails for her, claiming he was living in Alaska.  Jaime was working with police to try to locate Mack.

On the morning of March 4, Mack came to Jaime's apartment and kicked in the door.  She fled out the front door, wearing only jeans and a bra, but Mack caught her and forced her into her car while a neighbor who witnessed the abduction called police.  Mack told her he had a weapon, and would hurt her if she tried to escape.  He drove her to an unfamiliar neighborhood, where he parked.  He twice forcibly raped her and twice forced her to orally copulate him.

Mack drove to a different location, where he got out of the car and allowed Jaime to leave.  She drove to a telephone and called 911.  Police found Mack a short time later

-2-

trying to hide.  At the police station, Mack expressed regret for what he had done, asked for a deal, and said Jaime would never testify against him.

### B.  The Defense

Mack testified the sexual encounter on February 6 was consensual.  When he returned the following morning, he entered using a key Jaime had given to him and again had consensual sex.  Jaime was angry with Mack because he had slept with her sister.  Jaime had threatened to file a false police report asserting he had raped her.  He returned her key to her and left.

When he returned March 4, he accidentally broke a window while entering.  He forced her into the car so they could talk.  They ended up having consensual sex in the car.  He denied making one of the statements to police attributed to him, but instead only stated he had "----ed up" and that Jaime would not testify against him because she loved him.

(Lodgment No. 12 at 3-5.)

## III.   PROCEDURAL BACKGROUND

On November 14, 2005, the San Diego County District Attorney filed an amended information charging Clayton Trevor Mack with one count of kidnaping for rape, a violation of California Penal Code (Penal Code) section 209(b)(1) (count one), kidnaping, a violation of Penal Code section 207(a) (count two), three counts of forcible rape, violations of Penal Code section 261(a)(2) (counts three, four and ten), three counts of forcible oral copulation, violations of Penal Code section 288a(c)(2) (counts five, six and eleven), two counts of residential burglary, violations of Penal Code section 459 (counts seven and twelve), making a criminal threat, a violation of Penal Code 422 (count eight), corporal injury to a spouse or roommate, a violation of Penal Code section 273.5 (count nine), attempting to dissuade a witness from testifying, a violation of Penal Code section 136.1(a)(2) (count thirteen) and disobeying a court order, a violation of Penal Code section 166(a)(4) (count fourteen). (Lodgment No. 15, Clerk's Tr. vol. 1 at 0009-15.)  As to the rape and oral copulation charges alleged in counts three, four, five and six, the amended information alleged that Mack actually kidnaped the victim, within the meaning of Penal Code section 667.61(b)(c)(e), and that the kidnaping substantially increased the risk of harm to the victim, within the meaning of Penal Code section 667.61(d)(2).  As to the rape and oral copulation allegations in counts ten and eleven, the amended information alleged the crimes occurred during the commission of a burglary and that Mack was armed with a knife.  (*Id.*)   As to counts seven and twelve, the burglary counts, the amended information alleged the residence was inhabited, within the meaning

1  of Penal Code section 460, that Mack was ineligible for probation, within the meaning of Penal Code

2  section 462(a), and there was a person present in the residence during the commission of the burglary,

3  within the meaning in Penal Code section 667.5(c)(21).  Finally, the amended information alleged that

4  Mack had suffered two prior convictions which made him ineligible for probation, within the meaning

5  of Penal Code section 1203(e)(4).  (*Id.*)

6         Following a jury trial, Mack was convicted of all counts except for count two, kidnaping, and

7  count twelve, residential burglary.  (Lodgment No. 15, Clerk's Tr. vol. 2 at 0338-40.)  The jury also

8  found not true the allegations that the rapes and oral copulations, as alleged in counts ten and eleven,

9  were committed during the commission of a burglary.  (*Id.*)  Mack was sentenced to twenty-five years

10  to life as the principal term for his rape conviction in count three, the mid term of six years on each of

11  the remaining rape and oral copulation convictions (counts four, five, six, ten, and eleven) to be served

12  consecutively, the upper term of six years on the burglary count (count seven) for an additional

13  consecutive determinate term of thirty-eight years and eight months in prison.  (*Id.* at 0276-80.)  The

14  court also sentenced Mack to the mid term of two years for his conviction for making a criminal threat

15  (count eight), the mid term of three years for his corporal injury to a cohabitant conviction (count nine),

16  and the mid-term of two years on his conviction for attempting to dissuade a witness from testifying

17  (count thirteen).  These counts were to be served concurrently.  (*Id.*)  Finally, the court sentenced Mack

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1    to life with the possibility of parole for his kidnaping for the purpose of rape conviction (count one),

2    which was stayed pursuant to California Penal Code sections 667.61(f)[2] and 654[3].

3            Mack appealed his conviction to the California Court of Appeal.  (Lodgment Nos. 1, 2, 3.)  The

4    court affirmed Mack's conviction, but reversed the sentence as to count seven, the burglary count

5    because it violated the California Supreme Court's holding in *Cunningham v. California*, 549 U.S. 270

6    (2007) by relying on facts not found by a jury beyond a reasonable doubt or admitted to by Mack to

7    sentence him to the aggravated term.  (Lodgment No. 4 at 15-25.)  Both Mack and the Attorney General

8    thereafter filed petitions for review in the California Supreme Court.  (Lodgment Nos. 5, 6.)  That court

9    denied Mack's petition, but granted Respondent's, deferring action on the petition and many other cases

10   until further order of the court.  (Lodgment No. 7.)

11           After the petition for review was granted, the California Supreme Court decided *People v. Black*,

12   41 Cal. 4th 799 (2007) (*Black II*), which held that an upper term may be imposed consistent with

13   *Cunningham* if either at least one valid aggravating factor was found in a manner consistent with

14   *Cunningham* or a prior conviction was found true by the trial court, and *People v. Sandoval*, 41 Cal. 4th

15   825 (2007), which reformed California's determinate sentencing law (DSL) to avoid unconstitutionality

16   by requiring judges in cases remanded for resentencing for *Cunningham* error to state reasons for

17

18           [2]  California Penal Code section 667.61(f) states:

19                   If only the minimum number of circumstances specified in subdivision
             (d) or (e) that are required for the punishment provided in subdivision (a) or (b)

20           to apply have been pled and proved, that circumstance or those circumstances
             shall be used as the basis for imposing the term provided in subdivision (a) or

21           (b), whichever is greater, rather than being used to impose the punishment
             authorized under any other provision of law, unless another provision of law

22           provides for a greater penalty or the punishment under another provision of law
             can be imposed in addition to the punishment provided by this section.

23           However, if any additional circumstance or circumstances specified in
             subdivision (d) or (e) have been pled and proved, the minimum number of

24           circumstances shall be used as the basis for imposing the term provided in
             subdivision (a), and any other additional circumstance or circumstances shall

25           be used to impose any punishment or enhancement authorized under any other
             provision of law.

26           [3]  California Penal Code section 654(a) states, in pertinent part:

27                   An act or omission that is punishable in different ways by different
             provisions of law shall be punished under the provision that provides for the

28           longest potential term of imprisonment, but in no case shall the act or omission
             be punished under more than one provision.

choosing an upper term but refrain from finding specific facts to support such a sentence. *Black*, 41 Cal. 4th at 812; *Sandoval*, 41 Cal. 4th at 846. Mack's case, along with many others, was remanded to the California Court of Appeal with direction to "vacate its decision and reconsider the cause in light of *People v. Black* (2007) 41 Cal.4th 799 and *People v. Sandoval* (2007) 41 Cal 4th 825 . . . ." (Lodgment No. 8.)

On remand, the state appellate court again affirmed the convictions but remanded the matter to the trial court for resentencing on counts one (kidnaping for purposes of rape) and count nine (corporal injury to a cohabitant) pursuant to California Penal Code section 654 which prohibits punishing a defendant multiple times for a single act, even if the act violates multiple statutes. (Lodgment No. 12.) Mack then filed a petition for review in the California Supreme Court, which that court denied without citation of authority. (Lodgment Nos. 13, 14.)

**IV.     DISCUSSION**

    A.     *Standard of Review*

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004). Additionally, the state court's factual determinations are presumed correct, and Mack carries the burden of rebutting this presumption with "clear and convincing evidence." 28 U.S.C.A. § 2254(e)(1) (West 2006).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case

differently than the Supreme Court on a set of materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id.* Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *Early*, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.* Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer*, 538 U.S. at 72.

B.    *Analysis*

Mack raises four claims in his petition. First, he argues the denial of his request to replace retained counsel with another retained attorney violated his Sixth Amendment right to counsel of his choice. Second, he argues the denial of his request to represent himself violated his federal due process rights. Third, he claims the refusal of the trial court to either permit him to change attorneys or represent himself rendered his trial fundamentally unfair, violating his federal due process rights. Finally, he contends his Sixth Amendment right, as delineated by *Apprendi* and its progeny, to have any fact which increases his sentence beyond the statutory maximum be found beyond a reasonable doubt by a jury or admitted was violated. (Pet. at 10-14.) Respondent counters that Mack has not established the state

1    court's decision denying his claims were either contrary to, or an unreasonable application of, clearly

2    established Supreme Court law.  (Mem. of P. & A. Supp. Answer at 9-35.)

3         1.    *Denial of Mack's Request to Replace Retained Counsel*

4         Mack argues his Sixth Amendment right to counsel of his choice was violated when the trial

5    court refused to grant him a continuance in order to replace retained counsel.  (Pet. at 10, 45-46.)

6    Respondent contends the state court's resolution of this claim is neither contrary to, nor an unreasonable

7    application of. clearly established Supreme Court law.  (Mem. P.& A. Supp. Answer at 12-18.)  Mack

8    raised this claim in the petition for review he filed in the California Supreme Court, which denied the

9    petition without citation of authority.  (Lodgment Nos. 13, 14.)  Accordingly, this Court must "look

10   through" to the California Court of Appeal's opinion denying the claim as the basis for its analysis.  *See*

11   *Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991).  That court wrote:

12         Mack argues the trial court erroneously denied the *Ortiz* motion [a motion to
           replace retained counsel] because it incorrectly applied the standards used to evaluate
13         a request to replace *appointed* counsel under [*People v.*] *Marsden*, [2 Cal. 3d 118
           (1970)], and the error is reversible per se.  Mack alternatively appears to argue that, to
14         the extent the court applied the correct standard but denied the motion as untimely, the
           ruling was error.

15         *Legal Framework*

16         "[D]ue process of law, as it is expressed through the right-to-counsel provisions
17         of the state and federal Constitutions, comprehends a right to appear and defend with
           retained counsel of one's own choice."  (*People v. Byoune* (1966) 65 Cal.3d 345, 346 .)
18         Unlike a request to replace *appointed* counsel, under *Marsden*, where the inquiry is
           focused on the adequacy of the representation being provided or the presence of an
19         irreconcilable conflict likely to harm adequate representation (*Ortiz, supra,* 51 Cal.3d at
           p. 984), a defendant may replace *retained* counsel with or without cause.  (*Id.* at p. 983.)

20         The right to replace retained counsel, however, "is not absolute" and must be
21         balanced against countervailing interests, including the government's "interest in
           proceeding with prosecutions on an orderly and expeditious basis, taking into account
22         the practical difficulties of "assembling witnesses, lawyers, and jurors at the same place
           at the same time." ' " (*Ortiz, supra,* 51 Cal.3d at pp. 983-984.)  Although the trial court
23         should accommodate a defendant's request to obtain private counsel of his or her choice,
           it is not required to do so where an accommodation will result "'in a disruption of the
24         orderly process of justice unreasonable under the circumstances of the particular case.'"
           (*People v. Courts* (1985) 37 Cal.3d 784, 790 (*Courts*).)  When deciding whether the
25         denial of a continuance to obtain private counsel "was so arbitrary as to violate due
           process," we evaluate "the circumstances of [the] case" and " ' "particularly . . . the
26         reasons presented to the trial judge at the time the request [was] denied." ' " (*Id.* at p.
           791.)

27

28   ///

-8-

*Analysis*

Mack's primary assertion is that the trial court applied the *Marsden* framework to assess his motion to replace retained counsel rather than applying the *Ortiz* framework, and this error is per se reversible. However, we have carefully reviewed the proceedings, and are convinced the trial court understood the standards of *Ortiz* rather than *Marsden* applied, and applied the correct framework. The court (1) specifically advised Mack that his reference to *Marsden* was inaccurate because his present attorney was retained rather than appointed and therefore *Marsden* was not the appropriate framework for his request, (2) explained Mack had the right to change counsel under limited circumstances, and (3) advised Mack that it would have granted his motion to replace counsel had new retained counsel been ready to go to trial. Although Mack cites passages in the record where the court noted Mack's current counsel was competent, the court's comments were made not in connection with the ruling on Mack's *Ortiz* motion, but were instead made *after* the court had already denied his *Ortiz* motion as untimely (a proper consideration under the *Ortiz* framework) and were made in connection with assessing his *Faretta [v. California* (1975) 422 U.S. 806] motion.

The court denied Mack's *Ortiz* motion because, although Mack had been forewarned that any substitution should be made (and counsel be ready to proceed) by the scheduled trial date, Mack nevertheless waited until the day of trial to seek a trial continuance (to allow new counsel to prepare for trial) as an essential adjunct of his *Ortiz* motion, and therefore the motion was untimely. Moreover, the court noted there was uncertainty when (or even if) new counsel would take over the case, which further militated against granting the continuance. The courts have recognized that requests for continuances that are made on the date of trial, as Mack's request was here, [footnote omitted] jeopardize the orderly administration of justice (*Ortiz, supra,* 51 Cal.3d at pp. 983-984), and trial courts have latitude to deny such requests. (*People v. Molina* (1977) 74 Cal.App.3d 544, 548 ["while generally a defendant is entitled to be represented by counsel of his own choosing, the right must be asserted in a timely fashion"]; *People v. Jeffers* (1987) 188 Cal.App.3d 840, 850 ["Where a continuance is requested on the day of trial, the lateness of the request may be a significant factor justifying denial absent compelling circumstances to the contrary."]; cf. *Courts, supra,* 37 Cal.3d at pp. 791-792 & fn. 4 [distinguishing request for continuance of trial in case made "a week before trial" from "eve-of-trial, day-of-trial, and second-day-of-trial requests" found to have been properly denied in other cases].) Additionally, at the time of Mack's request for a continuance, the trial court was informed there was only a *possibility* Mack would retain new counsel.

A trial court has greater latitude to deny a request for a continuance for purposes of substituting private counsel when the prospect that a defendant will retain such counsel is "still quite speculative at the time the motion for continuance [i]s made." (*Courts, supra,* 37 Cal.3d at p. 791, fn. 3 [emphasizing the request in that case, which was accompanied by testimony establishing that "a lawyer-client relationship had been established" with prospective retained counsel, was distinguishable from requests in "cases which have upheld the denial of a continuance on the ground that participation by a particular private attorney was still quite speculative at the time the motion for continuance was made"].) Here, the proffer before the trial court regarding Mack's continuance request was that Mack had called Haddad the previous evening and was "going to hire" Haddad, who would take over "as long as I can get payment to him," suggesting on its face a new lawyer had not yet been retained and Haddad's purported agreement to represent Mack was conditional. Indeed, Mack's request was unaccompanied by any suggestion of when Haddad would be available or why Haddad had not yet been in contact with either the court or Mack's current counsel. (See *People v. Johnson* (1970) 5 Cal.App.3d 851, 858-859 [upholding trial court's denial of day-of-

1   trial request for continuance to obtain private counsel where private counsel had not
2   contacted court, and witnesses were ready, because "[t]o continue the trial as such a date on such nebulous grounds would adversely affect the orderly administration of justice"].)

3        We conclude the trial court applied the correct standard for Mack's request for
4   a continuance to substitute new retained counsel, and did not abuse its discretion in denying the motion.

5   (Lodgment No. 12 at 7-11.)

6        "The Sixth Amendment to the Constitution of the United States provides that 'In all criminal

7   prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense.'"

8   *Bradley v. Henry*, 510 F.3d 1093, 1096 (9th Cir. 2007) quoting U.S. Const. amend. VI.  The United

9   States Supreme Court has held that "an element of this right is the right of a defendant who does not

10  require appointed counsel to choose who will represent him."  *United States v. Gonzalez-Lopez*, 548

11  U.S. 140, 144, citing *Wheat v. United States*, 486 U.S. 153, 159 (1984).  The right is not, however,

12  absolute, as the Ninth Circuit has noted:

13        [T]here are four specific situations in which the Sixth Amendment does not entitle a
        defendant to preferred counsel:  A defendant does not have the right to be represented
14      by (1) an attorney he cannot afford; (2) an attorney who is not willing to represent the
        defendant; (3) an attorney with a conflict of interest; or (4) an advocate (other than
15      himself) who is not a member of the bar.  [Citation omitted.]  In addition, the Court has
        established that a trial court requires "wide latitude in balancing the right to counsel of
16      choice against the needs of fairness, and against the demands of its calendar. [Citation.]
        As such, trial courts retain the discretion to "make scheduling and other decisions that
17      effectively exclude a defendant's first choice of counsel." [Citation.]

18  *Miller v. Blackletter*, 525 F.3d 890, 895 (9th Cir. 2008), citing *Wheat*, 486 U.S. at 159 and *Gonzalez-*

19  *Lopez*, 548 U.S. at 152.

20        The state appellate court used the correct standard to evaluate Mack's request to replace retained

21  counsel.  (*See* Lodgment No. 12 at 8.)  Thus, the decision is not "contrary to" clearly established

22  Supreme Court law.  *See Williams*, 529 U.S. at 412-13.

23        Moreover, the trial court carefully and thoroughly addressed Mack's request to replace retained

24  counsel and properly evaluated the circumstances surrounding his request.  Mack made his request at

25  a pretrial hearing to determine his competency pursuant to California Penal Code section 1368.[4]  Mack

26  ///

27

28
    ────────────────────
        [4] Penal Code section 1368 provides a mechanism for referring a defendant for evaluation of his or her
    competency to stand trial.

09cv1700

1   stated that he wanted a *Marsden*[5] hearing and that he wanted to "go pro per." (Lodgment No. 17 at 5.)

2   The trial judge explained to Mack that *Marsden* was not the proper method for replacing his attorney,

3   Mr. Steigerwalt, because he was a retained attorney. *Id.* at 5-6.  The court further explained that Mack

4   had the right, under limited circumstances, "to fire Mr. Steigerwalt and hire another attorney" or

5   represent himself. (Lodgment No. 17 at 5.)  Mack explained that he had "another attorney lined up,

6   hopefully, that's going to take on the case." (*Id.* at 6.)  When asked whether he was ready to proceed

7   either pro per or with a new attorney, Mack replied that he was "going to hire Roland Haddad," and that

8   Haddad would need time to review the case. (*Id.*)  Mack had spoken to Haddad the day before and,

9   according to Mack, would accept the case if Mack could pay Haddad a retainer by the end of the week.

10  At that point, Haddad would set up a meeting with Mack to discuss the case and prepare. (*Id.* at 6-7.)

11  The judge told Mack that the request was untimely because the case was set for trial that day and

12  therefore the request for a continuance to hire new counsel was denied. (*Id.* at 7-8.)  The court also

13  explained:

> THE COURT: If, if there was another attorney present, Mr. Haddad was present here and indicated "I'm ready, willing and able to step in, your Honor," I certainly would grant your request to substitute counsel, if counsel was ready to go; but since we don't have that, it's uncertain.
>
> THE DEFENDANT: Well —
>
> THE COURT: You haven't retained him.  In fact, we don't know when that retention would occur, if it could occur.  All of those variables make it very uncertain and do not constitute good cause for a continuance.
>
> THE DEFENDANT: Well, I am ready to represent myself then, pro per.

21  (*Id.* at 8.)

22      Given Mack's statements that he "hopefully" had Mr. Haddad lined up to take over his case, and

23  that he was "going to hire" Mr. Haddad who would take over "as long as I can pay him," it is unclear

24  whether Mack could afford to hire Haddad or that Haddad would remain willing to represent him if

25  Mack was unable to pay him the amount Haddad requested by the end of the week.  *See Miller*, 525

26  F.3d at 895.  Haddad was not even present at the hearing. (Lodgment No. 17 at 7.)  Further, Mack told

---

28      [5] Under *People v. Marsden*, 2 Cal. 3d 118 (1970), criminal defendants in California may ask the court to discharge their appointed attorney and appoint a new attorney when their right to effective representation is jeopardized.

the judge that Haddad would be not be ready to proceed until he had met with Mack and reviewed the case materials.  The case was set for trial that morning, and the judge appropriately considered this fact, by "balancing the right to counsel of choice against . . . the demands of [the court's] calendar." *Miller*, 525 F.3d at 895.

Both the state trial and appellate courts conducted a thorough and fair analysis of Mack's request to replace retained counsel and used the proper standard in doing so.  Accordingly, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  *Williams*, 529 U.S. at 412-13.  He is not entitled to relief as to this claim.

> 2.   *Denial of Mack's Request to Represent Himself*

Mack claims the state court wrongly denied his request to represent himself, violating the federal constitutional rights afforded him under *Faretta v. California*, 422 U.S. 806 (1975).  (Pet. at 10.) Respondent counters that the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (Mem. P. & A. Supp. Pet. at 18-24.)  Mack raised this claim in the petition for review he filed in the California Supreme Court, which denied the claim without citation of authority.  (Lodgment Nos. 13, 14.)  Accordingly, this Court must "look through" to the California Appellate Court opinion denying the claim as the basis for its analysis. That court wrote:

> C.   Analysis of Ruling on the *Faretta* Motion
>
> Mack contends the trial court abused its discretion by denying his alternative *Faretta* motion to represent himself.
>
> *Legal Framework*
>
> A defendant has a federal constitutional right to self-representation in a criminal proceeding (*Faretta*, *supra*, 422 U.S. at p. 819), and *Faretta* applies to California criminal proceedings (*People v. Windham* (1977) 19 Cal.3d 121, 128 [a trial court must grant a defendant's *Faretta* motion "upon ascertaining that he [or she] has voluntarily and intelligently elected to do so, irrespective of how unwise such a choice might appear to be"].)   Generally, "[a] trial court must grant a defendant's request for self-representation if three conditions are met.  First, the defendant must be mentally competent, and must make [the] request knowingly and intelligently, having been apprised of the dangers of self-representation. [Citations.] Second, [the defendant] must make [the] request unequivocally. [Citations.] Third, [the defendant] must make [the] request within a reasonable time before trial. [Citations.]" (*People v. Welch* (1999) 20 Cal.4th 701, 729.)

/ / /

Although a defendant has the right to self-representation, to invoke an unconditional right he or she must assert it within a reasonable time prior to the commencement of trial. (*People v. Welch*, *supra*, 20 Cal.4th at p. 729.) A motion not made within a reasonable time prior to trial is addressed to the sound discretion of the trial court. (*People v. Marshall* (1996) 13 Cal.4th 799, 827.) In exercising its discretion the trial court should consider the quality of counsel's representation, the defendant's prior proclivity to substitute counsel, the reason for the request, the stage of the proceedings, and the disruption or delay that might reasonably be expected to follow granting the motion. (*Ibid.*) Additionally, a trial court may deny the motion if it finds it is made for the purpose of frustrating the orderly administration of justice. (*People v. Marshall* (1997) 15 Cal.4th 1, 23.) Finally, when ruling on a motion made in close proximity to trial, the court may also consider whether the defendant's prior conduct has demonstrated a likelihood the proceedings would be disrupted in the event the motion for self-representation is granted. (*People v. Jenkins* (2000) 22 Cal.4th 900, 962-963.) This includes consideration of defendant's manner and demeanor, any previous disruptive behavior, and any lack of control over his or her emotions that would demonstrate a risk of disruption of future court proceedings. (*Ibid.*) In exercising its discretion, the court may rely on a defendant's previous conduct and need not credit assurances made by the defendant at the time of the motion that he or she would not cause further disruption of the proceedings. (*Ibid.*)

When considering a *Faretta* motion made on the eve of trial, the court's discretion is "broad." (*People v. Hardy* (1992) 2 Cal.4th 86, 196.) On appeal, we "must give 'considerable weight' to the court's exercise of discretion and must examine the total circumstances confronting the court when the decision is made." (*People v. Howze* (2001) 85 Cal.App.4th 1380, 1397-1398.)

*Analysis*

The court concluded Mack's motion was untimely because it was made on the day trial was scheduled to begin. Moreover, it was accompanied by a request for a continuance that the trial court had already rejected. [footnote 8] Although

> [footnote 8: Mack argues the request was timely because, although he asked to continue the trial to allow him to prepare, he agreed to start trial without a continuance were his motion granted. However, a court could well conclude his offer to go to trial without preparation cast doubt on whether his *Faretta* request was "knowing[] and intelligent[], having been apprised of the dangers of self-representation" (*People v. Welch*, *supra*, 20 Cal.4th at p. 729), and was attempting to set up the record for appeal by "playing 'the *Faretta* game'" (*People v. Williams* (1990) 220 Cal.App.3d 1165, 1170) for a subsequent appeal asserting his trial was unfair because he was denied time to prepare.]

there is no bright line test for determining the timeliness of a *Faretta* motion (*People v. Clark* (1992) 3 Cal.4th 41, 99), the courts have noted a motion made within three calendar days of the commencement of trial does not give rise to an unqualified right to self-representation, and a court has discretion to deny the motion as untimely. (*People v. Rudd* (1998) 63 Cal.App.3th 620, 626.) Indeed, even a motion made six calendar days prior to trial was made in such "close proximity" to trial that the decision whether to deny it as untimely was within the discretion of the trial court. (*People v. Ruiz* (1983) 142 Cal.App.3d 780, 789-791.)

/ / /

The court below carefully considered each of the factors relevant to a *Faretta* motion made on the eve of trial. It considered the quality of counsel's representation (*People v. Marshall*, *supra*, 13 Cal.4th at p. 827), and noted Mack's attorney was competent and prepared for trial. It assessed Mack's stated reason for the request, and concluded the purported conflict arising from his allege physical attraction to counsel was "not credible to me [but instead] seem[s] to me to be patently false and manipulative." [footnote 10 omitted.] The court also evaluated whether Mack had a proclivity to substitute counsel, and concluded Mack did manifest a proclivity to try to manipulate the proceedings to delay trial (by apparently feigning mental illness and then refusing to cooperate with the doctor in section 1368 proceedings and by seeking a continuance on the day of trial), which is a permissible consideration. (See *People v. Marshall*, *supra*, 15 Cal.4th at p. 23 [court may deny a motion if it finds it is made for the purpose of frustrating the orderly administration of justice].) The court also considered whether Mack's prior conduct raised a likelihood the proceedings would be disrupted were his motion for self-representation granted. (*People v. Jenkins*, *supra*, 22 Cal.4th at pp. 962-963.) The court noted he had delayed the proceedings by feigning mental illness and there was "reason to believe that that behavior could occur again," had shown a mercurial temperament and sullenly obstreperous behavior, and had threatened to spit on the prosecutor. These behaviors raised concerns that Mack would be unable to comport with appropriate courtroom behavior but would instead be disruptive were he representing himself. The court concluded Mack's course of conduct showed he was "playing a game with the court" and seeking to "delay these proceedings because the options are not great," which are proper considerations supporting denial of a *Faretta* motion. (*People v. Williams*, *supra*, 220 Cal.App.3d at p. 1170.)

We conclude, considering all the circumstances, the denial of Mack's *Faretta* motion was not an abuse of discretion.

(Lodgment No. 12 at 11-16.)

As the state court correctly noted, under *Faretta*, "[a] defendant in a state court criminal proceeding has an absolute right to be represented by counsel or to represent himself." *Jackson*, 921 F.2d at 888, citing *Faretta*, 422 U.S. at 807. In order to invoke the right of self-representation, the defendant's request must be timely, unequivocal and not made for purposes of delay. *Sandoval v. Calderon*, 241 F.3d 765, 774 (9th Cir. 2001).

While Mack's request was unequivocal, the state court properly concluded it was not timely. "[T]he Supreme Court has not clearly established when a *Faretta* request is untimely, [and thus] other courts are free to do so as long as their standards comport with the Supreme Court's holding that a request 'weeks before trial' is timely." *Marshall v. Taylor*, 395 F.3d 1058, 1061 (9th Cir. 2005). The California Supreme Court has stated a *Faretta* request is timely if it is made within a reasonable time before trial. *People v. Windham*, 19 Cal. 3d 121, 127 (1977). The state appellate court properly applied California's timeliness rule to Mack's *Faretta* request and found that it was not timely because it was made on the day of trial. (*See* Lodgment No. 17 at 8-9; Lodgment No. 12 at 13-14.) Moreover, because

1   Mack's request was well short of the "weeks before trial" time frame the Supreme Court has stated is

2   timely, the state court's determination that Mack's request was untimely was not an unreasonable

3   application of United States Supreme Court law.  *See Marshall*, 395 F.3d at 1061.

4          Mack claims his request to represent himself was timely because he first asked to represent

5   himself on October 24, 2005, two and a half weeks before trial.  (Pet'rs Mem. P. & A. Supp. Pet. at 11.)

6   On that date, however, Mack was referred by the court for a mental competency exam pursuant to

7   California Penal Code section 1368 to determine whether he was competent to stand trial.  (Lodgment

8   No. 15, vol. 2 at 0299.)  "Whether a defendant is competent to exercise the right to self-representation

9   is determined by the same standard as whether a defendant is competent to stand trial."  *United States*

10  *v. Glass*, No. 05-50221, 2009 WL 4827010 (9th Cir. 2009), citing *Godinez v.Moran*, 509 U.S. 389, 396

11  (1993).[6]  Even if a defendant is found competent, "a court may deny a defendant the right to

12  self-representation when the defendant . . . suffers from a 'severe mental illness.'"  *Indiana v. Edwards*,

13  ___U.S. ___, 128 S.Ct. 2379, 2387-88 (2008).  Thus, even if Mack had asked to represent himself on

14  October 24, 2005, the request could not have been granted at that juncture because his competency was

15  at issue.  Mack did not make a request for self-representation again until the day of trial, November 10,

16  2005.  (Lodgment No. 17 at 11.)  As discussed above, that request was properly denied.

17         In addition, the trial court properly concluded Mack's *Faretta* request for made for the purpose

18  of delaying the trial.  Mack claimed he wanted to represent himself because he was attracted to his

19  counsel and felt that it would be "very distracting for me and I don't feel I'm going to have the best

20  representation that I could."  (Lodgment No. 17 at 9.)  The trial judge had Mack fill out a waiver form

21  then questioned him about his answers.  Mack appeared to understand the charges and the possible

22  sentence he faced.  (*Id.* at 14-16.)  The trial judge also asked several questions about Mack's mental

23  state and any medications he took.  (*Id.* at 16-20.)

24         After reviewing the waiver and given his experience in court with Mack, the trial judge noted

25  that Mack had a history of exaggerating and attempting to manipulate the court.  The judge suspected

26  that Mack had lied about the medications he was taking because Mack's information did not comport

27  _____

28         [6]  Unpublished Ninth Circuit decisions may be cited commencing with decisions issued in 2007.  (See
       Ninth Cir. Rule 36-3.)  Although still not binding precedent, unpublished decisions have persuasive value and
       indicate how the Ninth Circuit applies binding authority.

1   with information the jail had provided him.  (*Id.* at 24-25.)  Mack had repeatedly feigned mental illness

2   in order to secure competency evaluations and delay the proceedings, a conclusion supported by the

3   doctors who evaluated Mack.  (*Id.* at 26-27.)  Mack refused to speak to one of the evaluating doctors,

4   in an apparent attempt to further delay the proceedings.  (*Id.* at 29.)  The judge also thought Mack's

5   claim that he was attracted to his counsel was a lie, as there was no indication in any of the facts of the

6   case or Mack's history that Mack was homosexual and Mack had made the claim "[with] a little grin

7   on his face."  (*Id.* at 28-29.)  The trial judge also believed that Mack's behavior indicated that he would

8   seek to further delay and disrupt the proceedings should he be permitted to represent himself.  The judge

9   had witnessed Mack yelling abusively at counsel in court and the bailiff had overheard Mack threaten

10  to spit in the prosecutor's face.  (*Id.* at 30-32.)  Finally, the judge noted that Mack was not prepared to

11  proceed to trial.  (*Id.* at 34.)  Considering all these factors, the judge denied Mack's *Faretta* request

12  because it was untimely and "not for legitimate reasons."  (*Id.* at 36.)

13      The record before the Court supports a conclusion that, using the proper standards, the state trial

14  court carefully examined Mack's *Faretta* request and denied it.  The state appellate court thoroughly

15  and properly reviewed the trial court's denial of the request, and the court's decision was neither

16  contrary to, nor an unreasonable application of, clearly established Supreme Court law.  *Williams*, 529

17  U.S. at 412-13.  Mack is not entitled to relief as to this claim.

18      3.      *Fundamental Unfairness*

19      Mack claims the denial of his right to replace retained counsel and the denial of right to represent

20  himself rendered his trial fundamentally unfair, violating his federal due process rights.  (Pet's Mem.

21  of P. & A. Supp. Pet at 12.)  Respondent contends the state court's rejection of this claim was neither

22  contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (Mem. P. & A.

23  Supp. Answer at 25-26.)

24      Mack raised this claim in the petition for review he filed in the California Supreme Court.

25  (Lodgment No. 13.)  The court denied the petition without citation of authority.  (Lodgment No. 14.)

26  Normally, this Court would "look through" to the California appellate court decision as the basis for its

27  analysis.  *Ylst*, 501 U.S. at 805-06.  Because that court did not address this claim in its opinion, however,

28  (*see* Lodgment No. 12), this Court "must conduct an independent review of the record to determine

1  whether the denial of the claim is contrary to, or an unreasonable application of, clearly established

2  Supreme Court law.  *See Delgado*, 223 F.3d at 982; *Himes*, 336 F.3d at 853.

3         Mack's contention that the denial of his Sixth Amendment right to counsel of his choice and his

4  right to represent himself rendered his trial fundamentally unfair is essentially a cumulative error claim.

5  "Cumulative error applies where, although no single trial error examined in isolation is sufficiently

6  prejudicial to warrant reversal, the cumulative effect of multiple errors has still prejudiced a defendant."

7  *Jackson v. Brown*, 513 F.3d 1057, 1085 (9th Cir. 2008) quoting *Whelchel v. Washington*, 232 F.3d 1197,

8  1212 (9th Cir. 2000)  Because the Court has concluded that Mack's Sixth Amendment rights were not

9  violated by either the denial of his right to replace retained counsel or his right to represent himself, it

10 follows that no cumulative error occurred, and the state court's denial of the claim is thus neither

11 contrary to, nor an unreasonable application of, clearly established Supreme Court law.  *Williams*, 529

12 U.S. at 412-13.  Mack is not entitled to relief as to this claim.

13         4.    *Apprendi/Cunningham Violation*

14        Finally, Mack contends the state court violated his Sixth Amendment rights, as delineated in

15 *Apprendi* and its progeny, specifically *Cunningham v. California*.  Mack argues the court improperly

16 imposed the upper term for his burglary conviction because the facts supporting the upper term were

17 not found by a jury beyond a reasonable doubt or admitted by him.  (Pet'rs Mem. of P. & A. Supp. Pet

18 at 13-14.)  Respondent counters that the state court's resolution of this claim was neither contrary to,

19 nor an unreasonable application of, clearly established Supreme Court law.  (Mem. P. & A. Supp.

20 Answer at 34-42.)

21        The last reasoned state court decision to address this claim is the state appellate court's opinion

22 on remand.  That court wrote as follows:

23             Mack asserts that selection of the upper term for his conviction on count 7
          violated *Cunningham* because it was based on facts not found by the jury beyond a
24         reasonable doubt.  In *Cunningham*, the court concluded California's determinate
          sentencing law ("DSL") violates the Sixth Amendment because it "allocates to judges
25         sole authority to find facts permitting the imposition of an upper term sentence[.]"
          (*Cunningham v. California*, *supra*, 127 S.Ct. at p. 870.)  Relying on *Cunningham*, Mack
26         contends the trial court's imposition of the upper term on count 7 in this case violated
          his Sixth Amendment right to a jury trial.

27
              However, the California Supreme Court's recent decision in *People v. Black*,
28         *supra*, 41 Cal.4th 799 (*Black II*) concluded a trial court may impose the upper term

without offending *Cunningham* if the defendant "is *eligible* for the upper term by virtue of facts that have been established consistently with Sixth Amendment principles." (*Black II*, at p. 813.)  We conclude *Black II* controls this case and mandates affirmance of the sentence.

In *Black II*, the Supreme Court addressed the same issue raised by Mack here: whether imposition of the upper term violated the defendant's right to a jury trial.  The *Black II* court noted that in *Blakely v. Washington* (2004) 542 U.S. 296, the United States Supreme Court "explicitly recognized the legitimate role of 'judicial factfinding' in indeterminate sentencing, in which the judge may 'implicitly rule on those facts he deems important to the exercise of his sentencing discretion.' [Quoting *Blakely*, at p. 309.]" (*Black II*, *supra*, 41 Cal.4th at pp. 812-813.)  Accordingly, the *Black II* court concluded that "so long as a defendant is *eligible* for the upper term by virtue of facts that have been established consistently with Sixth Amendment principles, the federal Constitution permits the trial court to rely upon any number of aggravating circumstances in exercising its discretion to select the appropriate term by balancing aggravating and mitigating circumstances, regardless of whether the facts underlying those circumstances have been found to be true by a jury." (*Id.* at p. 813.)  In *Black II*, the court added that "[t]he facts upon which the trial court relies in exercising discretion to select among the terms available for a particular offense 'do not pertain to whether the defendant has a legal *right* to a lesser sentence — and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.' [Citation.]" (*Ibid*.)

After noting that "the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term" under California's DSL, the *Black II* court concluded that "if one aggravating circumstance has been established in accordance with the constitutional requirements set forth in *Blakely*, the defendant is not 'legally entitled' to the middle term sentence, and the upper term sentence is the 'statutory maximum' for Sixth Amendment purposes. (*Black II*, *supra*, 41 Cal.4th at p. 813.)  The *Black II* court then noted the United States Supreme Court "consistently has stated that the right to a jury trial does not apply to the fact of a prior conviction[,] [citations] [and that ] 'recidivism . . . is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence.' [Citation.]" (*Black II*, at p. 818].)  On that basis, the *Black II* court reasoned a defendant's criminal history alone may render him eligible for the upper term.

The *Black II* court, after noting the probation report reflected the appellant in *Black II* had convictions both numerous (three misdemeanors and two felonies) and of increasing seriousness, next addressed the defendant's argument that, even if the fact of a prior conviction may not be a jury issue, he was nevertheless entitled to a jury trial (under *Cunningham*) on the issues of numerosity or increasing seriousness.  The *Black II* court, rejecting the argument, explained the defendant "reads the 'prior conviction' exception too narrowly. [Citations.]  As we recognized in [*People v. McGee* (2006) 38 Cal.4th 682], numerous decisions from other jurisdictions have interpreted the *Almendarez-Torres* [*v. U.S.* (1998) 523 U.S. 224] exception to include not only the fact that a prior conviction occurred, but also other related issues that may be determined by examining the records of the prior convictions. [Citations.] [¶]  The determinations whether a defendant has suffered prior convictions, and whether those convictions are 'numerous or of increasing seriousness' (Cal. Rules of Court, rule 4.421(b)(2)), require consideration of only the number, dates, and offenses of the prior convictions alleged.  The relative seriousness of these alleged convictions may be determined simply by reference to the range of punishment provided by statute for each offense.  This type of determination is 'quite different from the resolution of the issues submitted to a jury, and is one more typically and appropriately undertaken by a court.' [Quoting *McGee*, *supra*, 38 Cal.4th at p. 706.]" (*Black II*, *supra*, 41 Cal.4th at pp. 819-820, fn. omitted.)

1
        Here, the court specifically noted Mack's prior convictions were numerous, and increasing in seriousness and violence.  Because Mack's numerous conviction[s] were alone a sufficient basis to make him eligible for the upper term, we are compelled under *Black II* to conclude Mack suffered no Sixth Amendment violation by the trial court's exercise of its discretion in selecting the upper term for count 7 in this case based on facts determined by the trial court.  (*Black II*, *supra*, 41 Cal.4th at p. 820.)

2

3

4

5
(Lodgment No. 12 at 16-19.)

6
        The Supreme Court held in *Cunningham* that California's DSL violated defendants' jury trial

7
rights safeguarded by the Sixth and Fourteenth Amendments because it permitted "a judge to impose

8
a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a

9
jury or admitted by the defendant." *Id*. at 275.  The *Cunningham* court held that the "statutory

10
maximum" is the middle term. *Id.* at 288-89.  Under California law, a single aggravating factor is

11
sufficient to support the imposition of the aggravated term. *See Butler v. Curry*, 528 F.3d 624, 642 (9th

12
Cir. 2008) (citing *People v. Osband*, 13 Cal. 4th 622, 728 (1996), *People v. Forster*, 29 Cal. App. 4th

13
1746 (1994), and *People v. Piceno* 195 Cal. App. 3d 1353 (1987).)  Thus, "if at least one of the

14
aggravating factors on which the judge relied in sentencing [Mack] was established in a manner

15
consistent with the Sixth Amendment, [Mack's] sentence does not violate the Constitution." *Butler*, 528

16
F.3d at 643.

17
        The trial court imposed the upper term on the burglary count, count seven, based on the

18
following aggravating factors: (1) Mack had "a substantial criminal record" and had been "committing

19
crimes for years, despite his youth, against numerous types of victims"; (2) his convictions were

20
"increasing in seriousness and increasing in violence"; and (3) "his history does indicate [he] is a serious

21
danger to the community." (Lodgment No. 16, vol. 9 at 1062.)  None of these facts were found by a jury

22
beyond a reasonable doubt, nor did Mack admit to any of them.  Even if the imposition of the aggravated

23
term violated *Cunningham*, however, the error was harmless.  *Cunningham* violations are subject to the

24
harmless error analysis prescribed by *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  *See Butler*, 528 F.3d

25
at 648.  *Brecht* requires the Court to determine whether "the error had a substantial and injurious effect

26
on [Mack's] sentence." *Id.* (quoting *Hoffman v. Arave*, 236 F.3d 523, 540 (9th Cir. 2001)).  "Under that

27
standard, we must grant relief if we are in 'grave doubt' as to whether a jury would have found the

28
/ / /

relevant aggravating factors beyond a reasonable doubt. *Id*. (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)). Rule 4.421(b) states the following are circumstances in aggravation:

> (b) Factors relating to the defendant
>
>> (1) The defendant had engaged in violent conduct that indicates a serious danger to society;
>>
>> (2) The defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness;
>> . . . .

Cal.R.Ct. 4.421(b)(1), (2).

Given Mack's convictions for three counts of forcible rape, three counts of forcible oral copulation, kidnaping for the purpose of rape, and corporal injury to a spouse or roommate as well as his criminal history, the Court is confident that a jury would have found these aggravating circumstances establish both of these valid, aggravating factors in a manner consistent with *Cunningham* and the Sixth Amendment. *See Butler*, 528 F.3d at 648-49. The crimes of which Mack was convicted were unequivocally "violent conduct that indicates a serious danger to society." In addition, Mack's prior convictions for indecent exposure, petty theft, trespassing, burglary, and cultivating marijuana. and his current convictions establish that his convictions are "of increasing seriousness." *See People v. Clark*, 12 Cal. App. 4th 663, 666 (1992) ("The offense for which a defendant is being sentenced may be considered in determining that his or her convictions are of increasing seriousness.") Accordingly, any *Cunningham* violation was harmless. *See Butler*, 528 F.3d at 643. Mack is not entitled to relief as to this claim. *Williams*, 529 U.S. at 412-13.

**V.  CONCLUSION**

Based on the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Petition for Writ of Habeas Corpus be **DENIED**. This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **May 27, 2010**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

/ / /

1    **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and

2    served on all parties no later than June 10, 2010.  The parties are advised that failure to file objections

3    within the specified time may waive the right to raise those objections on appeal of the Court's order.

4    *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

5    **IT IS SO ORDERED**.

6

7    DATED:  May 6, 2010

8    _____

9    Hon. Anthony J. Battaglia
     U.S. Magistrate Judge
10   United States District Court

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28